CHARLES L. KIEWERT v. PETER ANDERSON and Another.[1]

July 15, 1896.

Nos. 10,015—(279).

**Homestead—Construction of Statutes.**

Homestead interests are favored by the constitution and statute, and laws applicable thereto should receive a liberal construction.

**Same—Extension of City Limits.**

A homestead right, once acquired, is a valuable one; and an act of the legislature extending the limits of a city so as to include the homestead, while it retains all its characteristics as such, will not operate to reduce or diminish the rights of the owner of the homestead therein, unless the land surrounding it has become urban in its character.

**Same—Unplatted.**

Where the homestead situated within an incorporated city is used for agricultural purposes, and surrounded wholly or partly by laid-out and platted lands, rural in character, this does not affect its homestead character, so long as the homestead land itself is not laid out and platted.

Appeal by plaintiff from an order of the district court for Dakota county, Crosby, J., denying a motion for a new trial. Affirmed.

*William G. White,* for appellant.

*John B. & E. P. Sanborn,* for respondents.

BUCK, J.[2]   This is an action in ejectment to recover possession of lots 6 and 11, and a portion of lot 5, of Smith's outlots to West St. Paul. The plaintiff claims under an execution sale of these premises, from which no redemption was made. The judgment was recovered on February 16, 1894, and docketed on the same day; and the land was sold after due and proper notice, on April 16, 1894. No attack is made upon the regularity of the sale. The defendants, in their answer, claim that all the lots in question are their homestead, and, by reason of this fact, that they were exempt from sale under plaintiff's judgment and execution. The court so found, and ordered judgment for the defendants, and the only question presented here on this appeal is whether the conclusions of law follow from the facts found.

[1] Reported in 67 N. W. 1031.   [2] Mitchell, J., absent, took no part.

The further material facts are as follows:   On June 26, 1874, Robert A. Smith was the owner of 80 acres of land in Dakota county, and he then caused the same to be laid out and platted into certain lots, known as "Smith's Outlots," and this plat was duly recorded July 24, 1874, in the office of the register of deeds of Dakota county.   On November 21, 1876, Smith and wife conveyed to the defendant Peter Anderson lots 5, 6, 11, and 12 of these outlots, of which lots 5 and 6 contained about 3.40 acres each, and lots 11 and 12 each contained a little over 4 acres each.   On April 4, 1883, upon petition of Smith, proprietor of the plat, and Anderson, owner of said lots, said plat was, by a decree of the district court, vacated as to these four lots, and as to that portion of Mina street which is bounded on the north by said lots 5 and 6, and on the south by lots 11 and 12; but no evidence of said decree of vacation was ever recorded in the office of the register of deeds of Dakota county, and no evidence offered on the trial tending to show that plaintiff had any actual knowledge or notice thereof.   When Anderson bought these lots, in 1876, of Smith and wife, he entered into possession of the same, including that portion of Mina street which was vacated, and in the year 1877 built a house, barn, and other buildings upon lot 5, near the southeast corner thereof, and built a fence around the whole four lots, including said street, inclosing the same in one inclosure; and he grubbed and broke all the land, and has ever since resided upon the same with his wife and children, and cultivated the same, and raised vegetables thereon for the St. Paul markets, each year since the year 1877, and has always maintained and kept up the fence inclosing this land. The defendants do not now own, and never have since 1876 owned, any other land except the tract above described, and have never had any other homestead.   Said land so owned, inclosed, and occupied by the defendants comprises about 15 acres in one body.   That portion of said land known as lots numbered 6 and 11 is situated in the township of Mendota.   Prior to 1887 that part of this land which was known as lots 5 and 12 was situated in the township of West St. Paul, but in 1887, by an act of the legislature, the same was included in the corporate limits of the city of South St. Paul, and in 1889 the same was included in the corporate limits of the city of West St. Paul by an act of the legislature.   Prior to 1887 no part of said land was within any incorporated town, city, or village.   In 1887,

1888, and 1889 the population of South St. Paul did not exceed 2,000. The population of the city of West St. Paul never at any time exceeded 1,700. The dwelling house and buildings so constructed as aforesaid by the defendants, and occupied by them as their residence, were so occupied by them on February 24, 1894, and are located upon that portion of what was known as lot 5 which the sheriff certified in his return upon the execution and in his certificate of sale that he sold to the plaintiff for $500. The sheriff never demanded of the defendants, or made any request of them, that they select or designate the portion of these lands which they regarded as their homestead; and he never surveyed or set apart any portion of the same as the homestead of the defendants. The defendants have ever since they acquired title to the said lands, in 1876, used the same solely for agricultural purposes. On the north of the property herein described as being owned by the defendants, and north of Annapolis street, substantially all of the property between that point and the Mississippi river has for many years been laid out and platted into city lots, and since 1876 has been a portion of the city of St. Paul. All of the property herein referred to as having been laid out into city lots, and which is described as being on the north and on the east and on the south and on the west of defendants' lands, has for at least eight years been bought, sold, and used as city lots, and the size of said lots is the usual size in such cases, namely 40 feet in width, and about 120 feet in length.

The court found, as a conclusion of law, that the defendants were the owners of the land in controversy, and entitled to the possession of the same.

It is quite evident that these lots, containing between three and four acres each, were not laid out into "city lots," as the term is ordinarily used and popularly understood, but for agricultural purposes, for which purpose they have always been used by the defendants, and neither said lots nor the land surrounding them are urban in their character. Some 11 years before the plaintiff obtained his judgment, the plat was duly vacated as to these lots, by decree and judgment of the district court; and the same became a matter of public record in the office of the clerk of the said court. It is true that G. S. 1894, § 2317, provides that the court may order that its proceedings to vacate a plat be recorded in the office of the register

of deeds, as well as in the office of the clerk of the court; but we think, when they are duly filed in the office of the clerk of the district court, and judgment entered thereon, it is a valid judgment, although the proceedings are not recorded in the office of the register of deeds, and that such judgment cannot be attacked collaterally. The defendants being in the actual possession of the premises, having them fenced, and using them continuously for agricultural purposes, constituted full notice to third persons of their rights in the premises. After the vacation, the land became an entire tract, and at that time it was not situated in any incorporated city, town, or village, nor was it so situated until the year 1887. When the plat was vacated as to these lots, the premises were in precisely the same condition as if the plat had never been made; hence the defendants' right to the premises as a homestead vested in them by virtue of their residence upon the same, and their use thereof for agricultural purposes. This right became fixed in the defendants many years before the plaintiff recovered his judgment.

The homestead, once acquired, is a valuable right, and an act of the legislature extending the limits of a city so as to include the homestead, while it retains all its characteristics as such, will not operate to reduce or diminish the right of the owner of the homestead unless it becomes in fact urban property. Heidel v. Benedict, 61 Minn. 170, 63 N. W. 490.

Because the premises are wholly or partly surrounded by laid-out and platted lands does not affect its homestead character, so long as the land itself is not laid out and platted, and is not urban in its character. See, also, In re Smith's Estate, 51 Minn. 316, 53 N. W. 711.

The premises are not urban in the purpose for which they are used, nor in size, compared with other city lots laid out or platted in the city where these premises are situate. Homestead interests are favored by the constitution and statute, and the law applicable thereto should receive a liberal construction. In our opinion, the whole tract claimed by defendants is exempt as a homestead, and the plaintiff acquired no title by the sale of any part thereof under his execution.

Order affirmed.